UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ERIC JADE BLAIR,

    Plaintiff,

-vs-                                              Case No: 6:11-cv-401-Orl-31SPC

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.
_____/

# REPORT AND RECOMMENDATION[1]

**TO THE UNITED STATES DISTRICT COURT**

    This matter comes before the Court on Plaintiff, Eric Jade Blair's Complaint seeking review of the final decision of the Commissioner of Social Security (Commissioner) denying Plaintiff's claim for disability insurance (Doc. # 1) filed on March 16, 2011. The Plaintiff filed his Brief in Support of the Complaint (Doc. # 17) on July 24, 2011. The Commissioner filed a Memorandum in Support of the Commissioner's Decision (Doc. # 18) on October 11, 2011. Thus, the Motion is now ripe for review.

    The Undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and administrative record, and the pleadings and memoranda submitted by the parties in this case.

---

[1] This Report and Recommendation addresses only the issues brought up for review by the District Court pursuant to 42 U.S.C. 405 (g).

1

# FACTS

## *Procedural History*

The Plaintiff protectively filed an application for Child's Insurance Benefits based on disability on January 29, 2008, and for Supplemental Security Income on December 1, 2008. (Tr. 12). The Social Security Administration (SSA) denied initially on October 3, 2008, and on reconsideration on February 12, 2009. (Tr. 12). On March 27, 2009, Plaintiff filed a written request for hearing. (Tr. 6-7). On May 7, 2010, the ALJ held a hearing in Daytona Beach, Florida, and on June 22, 2010, the ALJ found that Plaintiff was not disabled. (Tr. 9-26). On January 26, 2011, the Appeals Council denied Plaintiff's request for review. (Tr. 1-5). Plaintiff challenges the ALJ's finding that he could perform light work and was therefore not disabled, and appeals the decision denying benefits under 42 U.S.C. § 1383(c)(3).

## *Plaintiff's History*

On the date of the ALJ's decision, Plaintiff was 22 years old. (Tr. 20). Plaintiff has a Special Diploma from high school and no past relevant work. (Tr. 180, 20). He alleges an onset of disability from April 30, 1990, his date of birth. (Tr. 85). Plaintiff alleges disability due to borderline intellectual functioning and a learning disorder.

## *Medical and Psychological History*

An electric drill was dropped on Plaintiff's head when he was one year old. (Tr. 424). Plaintiff had to take special education classes throughout high school (Tr. 173, 185, 210, 223, 226), and attend speech therapy services. (Tr. 228). Because he performed below grade level in reading and math, he had to take classes in order to receive a Special Diploma that does not require Florida Comprehensive Assessment Testing (FCAT). (Tr. 180, 218, 233).

Accordingly, in 2004, Plaintiff took a series of tests and failed the spelling test, scored at the 3rd grade level of reading and the 7th grade level in oral vocabulary. (Tr. 257). In 2007, Plaintiff scored at the 2nd grade reading level in Scholastic Reading Inventory testing (Tr. 218). In 2008, Plaintiff scored at the 3rd grade reading in Scholastic Reading Inventory testing. (Tr. 204, 290). Subsequently, a letter from the Volusia County School District stated that Plaintiff is a "student with a disability" according to the Individuals with Disabilities Education Act. (Tr. 188).

On March 12, 2008, one of Plaintiff's teachers opined that he has slight problems in several areas. (Tr. 159-162). Debbie Blair, Plaintiff's mother, reported that people who do not know Plaintiff can hardly ever understand his speech (Tr. 191); that he cannot explain why he did something, repeat stories he has heard, or ask for things he needs (Tr. 192); he cannot read or understand sentences in comics or books, cannot multiply or divide large numbers, make correct change, or carry out simple instructions (Tr. 193); he gets angry and frustrated when asked to repeat himself, his mother often cannot understand him (Tr. 194); he cannot cook meals for himself, take medication on his own, use public transportation alone, accept criticism (Tr. 195); and that he did well in special education classes but made D's when put in regular classes. (Tr. 196). Plaintiff's mother also reported that children make fun of his speech, that he is nervous and shy, and that he becomes angry and frustrated because he has to repeat himself a lot. (Tr. 192, 194). Plaintiff's mother reported that he has a thick piece of skin under his tongue which restricts his speech, and that he is "literally tongue tied." (Tr. 197).

On May 18, 1993, Ms. Gassett, M.A., CCC-SLP, performed a speech and language evaluation on Plaintiff. (Tr. 315). Ms. Gassett noted that Plaintiff underwent eight weeks of

3

speech therapy, uses one syllable words or gestures to get what he needs, much of what he said sounded like jargon, and that he was not toilet trained and was fearful of enclosed places. (Tr. 315). Ms. Gassett further reported that Plaintiff scored more than two standard deviations below average in the length of his sentences, and was unable to imitate the sounds required for the articulation testing. (Tr. 316). Ms. Gassett concluded, "[t]est results indicate that [Plaintiff's] receptive, expressive, and phonological language skills are significantly below average for his age. Pragmatic skills are adequate for his present language development. Intelligibility is judged to be poor." (Tr. 316). Ms. Gassett also felt that Plaintiff has a short attention span. (Tr. 316).

On October 26, 1992, an evaluation noted that Plaintiff made up his own words, used "strings of jargon," he was unable to focus for vocabulary picture testing, and had a moderate expressive language delay. (Tr. 317). On September 27, 1993, a psychological report noted that "much of what he said sounded like jargon" and that he had difficulty attending to tasks for more than three or four minutes. (Tr. 311). Plaintiff scored more than two standard deviations below average in articulation. (Tr. 311). During testing, it was very difficult to understand what he said, even when the object or picture of the test was known. He tended to leave off the ends of words. (Tr. 312). The examiner had to use a great deal of energy to keep him on task. (Tr. 312). He scored low in short-term memory (Tr. 312), and on vocabulary testing. (Tr. 313). Plaintiff's mother admitted that she had a difficult time understanding him, and that he must repeat what he says or lead her to what he wants. (Tr. 313).

On January 13, 1997, Mr. Tim S. Breter, Ed. S., NCSP, CBA, performed a psychological evaluation of Plaintiff. (Tr. 303-310). In the WISC-III IQ testing, Plaintiff scored in the low average, borderline, and intellectually deficient ranges as reported by Mr. Breter. (Tr. 304-305).

4

His verbal IQ was 74, performance IQ was 71, and full scale IQ was 70. (Tr. 305). Mr. Breter reported that Plaintiff "demonstrated poor planning/organizational ability (i.e. he required three pages to complete the designs)." (Tr. 306). Plaintiff also scored below his age in reading, math and written language in the Woodcock-Johnson Test of Achievement-Revised. (Tr. 307). He made mistakes in letter identification, number identification/counting, comparisons and shapes/shape concepts. (Tr. 308). He scored moderately low overall in the Vineland Adaptive Behavior Scales test of communication, daily living, and socialization. (Tr. 309).

On January 14, 1997, Joann L. Doyle performed a language re-evaluation report. (Tr. 301). The language tests revealed that Plaintiff was 1½ standard deviations below the mean for his age and that he has a "significant weakness" in phonological awareness. (Tr. 301-302).

On February 5, 1997, Ronald G. Gibson, a social worker, wrote a confidential social history of Plaintiff. (Tr. 298). Mr. Gibson noted that Plaintiff took speech therapy for eight weeks when he was two years old. (Tr. 299). When he was born, he had a series of ear infections, asthma, and his talking was delayed. (Tr. 299).

Plaintiff's mother reported that Plaintiff "won't bathe himself, talks to himself, BM in the back yard, uriniate [sic] in the front yard, eats in his room, goes out and puts up other peoples' garbage in the yard, [and] talks to his sister on the phone about wanting to run away." (Tr. 329, 340). Plaintiff's mother also reported that he talks to himself at night (Tr. 334), has difficulty in concentration, completing tasks, following instructions, understanding, talking, hearing, and getting along with others. (Tr. 339). She also reported that he gets upset easily (Tr. 340), she must force him to take a bath (Tr. 336, 356), and he does not change his clothes, brush his teeth or wipe his butt. (Tr. 356).

On July 8, 2008, J. Jeff Oatley performed a psychological evaluation and found that Plaintiff had a limited fund of knowledge, did not know there were 52 weeks or 12 months in a year, did not interpret the saying "don't make a mountain out of a molehill," and had coherent speech. (Tr. 401). Dr. Oatley found that Plaintiff could count by threes until 11 and then switched to counting by 2's, and that he knew the day but not the date, month or year. (Tr. 401). Dr. Oatley performed WAIS-III testing and found Plaintiff to have a verbal IQ of 68, performance IQ of 67, full scale IQ of 63, and working memory of 63. (Tr. 402). Dr. Oatley diagnosed phonological disorder, DSM-IV 315.39, and mild mental retardation, DSMIV 317, "as indicated by an individually administered intelligence test and adaptive behavior." (Tr. 402).

On July 9, 2008, a non-examining State Consultant found that Plaintiff has moderate limitations in the ability to maintain attention and concentration for extended periods; understand, remember or carry out detailed instructions; or complete a normal workday or workweek. (Tr. 404-405). Another non-examining State Consultant felt that Plaintiff has moderate limitations in activities of daily living and maintaining concentration, persistence or pace. (Tr. 418).

On January 27, 2009, Malcom J. Graham, III, Ph.D., performed a psychological evaluation. (Tr. 424). Dr. Graham asked a series of simple questions and noted that Plaintiff could not count by three's without errors, could remember breakfast, and does not have a driver's license. (Tr. 425). Dr. Graham diagnosed rule out learning disability, probable borderline intellectual functioning, vocational problems, and a global assessment of functioning of 65 to 75. (Tr. 426). Dr. Graham noted that Plaintiff "poops in the backyard, pees in the front yard." (Tr. 426).

On February 11, 2009, a non-examining State Consultant felt that Plaintiff has moderate limitations in the ability to sustain an ordinary routine without special supervision; the ability to understand, remember or carry out detailed instructions; the ability to complete a normal workday/workweek; the ability to travel to unfamiliar places or use public transportation; and the ability to set realistic goals or make plans independently of others. (Tr. 428-429).

*Administrative Law Judge's Decision*

The Administrative Law Judge Donald B. Fishman issued his "Notice of Decision – Unfavorable" on June 22, 2010. (Tr. 9-22). The Judge's specific findings were as follows:

1. Born on April 30, 1990, the claimant had not attained age 22 as of April 30, 1990, the alleged onset date (20 C.F.R. 404.102, 416.120(c)(4) and 404.350(a)(5)).

2. The claimant has not engaged in substantial gainful activity since April 30, 1990, the alleged onset date (20 C.F.R. 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: borderline intellectual functioning and learning disorder. (20 C.F.R. 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525 and 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the ALJ found the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: he is limited to performing repetitive short cycle work with a Specific Vocational Preparation of 1 to 2 which require only limited interaction with the public; however, he is able to be around the public and others in the workplace.

6. The claimant has no past relevant work (20 C.F.R. 404.1565 and 416.965).

7. The Plaintiff was born on April 30, 1990, and was 0 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 C.F.R. 404.1563 and 416.963; 42 U.S.C. § 402(d)).

8. The claimant has a special education high school diploma and is able to communicate in English (20 C.F.R. 404.1564 and 416.964).

9. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 C.F.R. 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, at any time from April 30, 1990, through the date of this decision (20 C.F.R. 404.350(a)(5), 404.1520(g) and 416.920(g)). (Tr. 12-22).

Plaintiff appealed the decision of the Administrative Law Judge to the Appeals Council, but the Appeals Council declined review by order dated January 26, 2011. (Tr. 1-5). This left the ALJ's decision as the final decision of the Commissioner. Plaintiff then filed his Complaint in this Court pursuant to 42 U.S.C. § 1383(c).

## **STANDARD OF REVIEW**

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, and whether the findings are supported by substantial evidence. Hibbard v. Comm'r, 2007 WL 4365647 at *2 (M.D. Fla. Dec. 12, 2007) (citing Richardson v. Perales,

402 U.S. 389, 390, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988)). In evaluating whether a claimant is disabled, the ALJ must follow the sequential inquiry described in the regulation.[2] (20 C.F.R. §§ 404.1520(a), 404.920(a)). The Commissioner's findings of fact are conclusive if supported by substantial evidence (42 U.S.C. § 405(g)). "Substantial evidence is more than a scintilla – *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion." Hibbard, 2007 WL 4365647 at *2 (citing Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838B39 (11th Cir. 1982))); Richardson, 402 U.S. at 401.

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. Phillips v. Barnhart, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004). The District Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Foote, 67 F.3d at 1560; Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992)

---

[2] The inquiry requires the ALJ to engage in a five-step analysis, which will either preclude or mandate a finding of disability. The steps are as follows:
  *Step 1*. Is the claimant engaged in substantial gainful activity? If the claimant is engaged in such activity, then he or she is not disabled. If not, then the ALJ must move on to the next question.
  *Step 2*. Does the claimant suffer from a severe impairment? If not, then the claimant is not disabled. If there is a severe impairment, the ALJ moves on to step three.
  *Step 3*. Does the claimant's impairment meet or equal one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. If so, then the claimant is disabled. If not, the next question must be resolved.
  *Step 4*. Can the claimant perform his or her former work? If the claimant can perform his or her past relevant work, he or she is not disabled. If not, the ALJ must answer the last question.
  *Step 5*. Can he or she engage in other work of the sort found in the national economy? If so, then the claimant is not disabled. If the claimant cannot engage in other work, then he or she is disabled. See 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f); see also Phillips v. Barnhart, 357 F.3d 1232, 1237-40 (11th Cir. 2004); Foote v. Chater, 67 F.3d 1553, 1557 (11th Cir. 1995) (per curiam).

(holding the court must scrutinize the entire record to determine reasonableness of factual findings).

The Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." Phillips, 357 F.3d at 1240 n.8; Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). If the Commissioner's decision is supported by substantial evidence, it should not be disturbed. Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997).

Congress has empowered the District Court to reverse the decision of the Commissioner without remanding the case. 42 U.S.C. § 405(g) (sentence four). The District Court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the District Court with sufficient reasoning to determine that the Commissioner properly applied the law. Williams v. Comm'r, 407 F. Supp. 2d 1297, 1299-1300 (M.D. Fla. 2005) (citing Keeton v. Dep't of Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994)); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991).

## DISCUSSION

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. (42 U.S.C. §§ 416 (I), 423 (d)(1); 20 C.F.R. § 404.1505). The impairment must be severe, making the claimant unable to do his or her previous work, or any other substantial gainful activity which exists in the national economy. (42 U.S.C. § 423 (d)(2); 20 C.F.R. §§ 404.1505 - 404.1511). To determine whether the claimant is disabled, the ALJ is required to evaluate the claim according to the established five-step evaluation process.

The Plaintiff sets forth three main issues for which he argues remand is proper. First, Plaintiff asserts that the ALJ's finding that Plaintiff does not satisfy Listing 12.05 is not based on the correct legal standards or supported by substantial evidence. Second, Plaintiff asserts that the ALJ's finding of non-disability is not based on the correct legal standards and is not supported by substantial evidence. Third, Plaintiff asserts that the appropriate remedy is to remand this case for an award of benefits.

The Commissioner argues the ALJ's decision is supported by substantial evidence in the record and Plaintiff did not satisfy the criteria in the introductory paragraph of Listing 12.05. The Commissioner also states that the record as a whole shows the ALJ properly determined Plaintiff's RFC in accordance with the correct legal standards. Lastly, the Commissioner asserts that the proper remedy, if the Court should find the ALJ erred, is remand for further proceedings, and not reversal for an award of benefits. The Court will consider each of these issues in turn.

*(1) Whether substantial evidence supports the ALJ's finding that Plaintiff did not meet Listing 12.05*

A claimant who is not currently engaging in substantial gainful activity and who has a severe impairment which meets or equals a listing is entitled to disability benefits. Edwards v. Heckler, 736 F.2d 625, 628 (11th Cir. 1984). When a plaintiff claims to have a condition that meets or equals a Listing, the plaintiff bears the burden of proof that she suffers from a severe impairment or combination of impairments. Gibbs v. Barnhart, 156 F. App'x 243, 246 (11th Cir. 2005). The Regulations are clear that a determination on the issue of medical equivalence to a listed impairment must be based upon medical findings. 20 C.F.R. § 404.1526(a). To meet a Listing, a plaintiff must have a diagnosis included in the Listings and must provide medical reports documenting the conditions meet all the specific criteria of the Listing. Johnson v.

Barnhart, 148 F. App'x 838, 840 (11th Cir. 2005). To equal a Listing, the medical findings must be at least equal in severity and duration to the listed findings. Wilson v. Barnhart, 284 F.3d 1219, 1224 (11th Cir. 2002) (citing 20 C.F.R. § 404.1526(a)).

An impairment or combination of impairments is not severe if it does not significantly limit [the plaintiff's] physical or mental ability to do basic work activities, including: (1) walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) [c]apacities for seeing, hearing, and speaking; (3) [u]nderstanding, carrying out, and remembering simple instructions; (4) [u]se of judgment; (5) [r]esponding appropriately to supervision, co-workers and usual work situations; and (6) [d]ealing with changes in a routine work setting. Id. (citing 20 C.F.R. § 404.1521(a),(b)). Where a claimant has alleged several impairments, the Commissioner has a duty to consider the impairments in combination and to determine whether the combined impairments render the claimant disabled. Jones v Dept. of Health and Human Svcs., 941 F.2d 1529, 1533 (11th Cir. 1991). An ALJ properly considers the plaintiff's impairments in combination if he states that the plaintiff does not have an impairment, or combination of impairments of sufficient severity to prevent him for engaging in any substantial gainful activity. Gibbs, 156 F. App'x at 246 (citing Wheeler v Heckler, 784 F.2d 1073, 1076 (11th Cir. 1986)).

> Listing 12.05 provides in relevant part:
>
> Mental retardation: Mental retardation refers to significantly sub average general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period, i.e., the evidence demonstrates or supports onset of the impairment before age 22. The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
> . . .

> A. Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded; OR
>
> . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function . . . .

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05. The introductory material to the mental disorders listings further provides that a claimant must satisfy both the diagnostic description in the introductory paragraph as well as one of the sets of criteria to meet Listing 12.05. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00A.

Plaintiff argues that he satisfies Listing 12.05A and C, contrary to the findings of the ALJ. With regard to Paragraph A, he argues that he requires dependence on others for personal needs because he urinates in the front yard and defecates in the back yard (Tr. 329, 340, 426), was not toilet trained (Tr. 315), does not bathe himself (Tr. 329, 336, 356 340), does not change his clothes, brush his teeth or wipe his butt (Tr. 356). He also argues that he satisfies the second part of paragraph A requiring inability to follow instructions, such as being precluded from standardized testing because he scored low enough on the FCAT to be put in remedial classes for a Special Diploma that does not require FCAT testing (Tr. 180, 218, 233), and repeatedly scored low on reading and math testing (Tr. 204, 218, 257, 290, 307, 312-313). Plaintiff further argues that he satisfies Paragraph C because an IQ test in 1997 showed a full scale IQ of 70 (Tr. 304) and the ALJ gave these school records significant weight (Tr. 20), and because the ALJ found that Blair has borderline intellectual functioning and learning disorder as severe impairments. (Tr. 15).

The ALJ considered Plaintiff's mental impairments under the requirements of Listing 12.05. (Tr. 15-17). As reflected in the ALJ's discussion of the evidence, the evidence did not establish Plaintiff had adaptive functioning limitations that amounted to mental retardation, as the diagnostic description in the introductory paragraph requires. (Tr. 15-18). In discussing Plaintiff's adaptive functioning, the ALJ noted Plaintiff's academic performance and reported daily activities. (Tr. 16). The ALJ pointed out Plaintiff was able to complete an exam to graduate high school, had a grade point average that placed him in the middle of his class, and attended some regular education classes, though the ALJ noted Plaintiff also attended several special education classes. (Tr. 16, 33-34, 218, 224, 233, 241, 279). The ALJ pointed out that Plaintiff reported mowing the lawn and attending to other household chores such as washing dishes and taking out the trash. (Tr. 16, 402, 426). Plaintiff watched television, used the computer to play internet poker, and played video games. (Tr. 16, 37-39, 426).

With respect to the Listing 12.05A criteria, Plaintiff argues that his reading and math scores equate to an "inability to follow directions" that precludes the use of "standardized measures of intellectual functioning" which satisfies the second part of Paragraph A. Pl.'s Br. at 11. But as the ALJ discussed, Plaintiff was able to follow directions in a January 1997 psychological evaluation, which included the administration of the Wechsler Intelligence Scale and which showed intellectual functioning in the borderline range (Tr. 16, 392-94 397-98). Testing in September 1993 and July 2008 similarly show Plaintiff could sufficiently respond to directions for evaluators to administer "standardized measures of intellectual functioning" and assess Plaintiff's cognitive functioning, language skills, and IQ. (Tr. 312-13, 401-02). Additionally, with regard to the first part of Paragraph A, Plaintiff cites that he was dependent on

others for personal needs – a 1993 exam showing Plaintiff was not yet toilet trained at the age of three and reports from Plaintiff's mother that he does not bathe and he urinates and defecates outdoors. This is unpersuasive in showing he meets the criteria of 12.05A. As the ALJ discussed, a more recent exam from 2008 showed reports from Plaintiff that he could cook breakfast for himself and was self-sufficient in bathing and dressing, and in a January 2009 evaluation Plaintiff denied urinating and defecating outdoors. (Tr. 16-17 402, 426). Evaluations from September 2006, May 2007, and May 2008 for Plaintiff's Individualized Education Plan (IEP) noted Plaintiff had strong capabilities in independent functioning, had no behavioral or health issues and demonstrated age appropriate skills socially and emotionally. (Tr. 17, 180, 204, 233).

With respect to the criteria of Listing 12.05C, Plaintiff contends he meets this listing because he has a full scale IQ of 63 as diagnosed by Dr. Oatley (Tr. 402) and had a severe impairment of a learning disorder in addition to "limited intellectual functioning." Pl.'s Br. at 13. However, Listing 12.05C requires Plaintiff establish that he had a severe impairment in addition to mental retardation. The ALJ instead found Plaintiff had severe impairments of borderline intellectual functioning and a learning disorder. (Tr. 15). The ALJ cited January 1997 IQ scores that placed Plaintiff in the borderline range of functioning, and a January 2009 evaluation and opinion from consultative psychologist Malcolm Graham, Ph.D., in which Dr. Graham assessed Plaintiff with probable borderline intellectual functioning. (Tr. 15-16, 393, 426). Thus, Plaintiff correctly noted he had a learning disorder in addition to "limited intellectual functioning," but this is insufficient to satisfy the criteria of 12.05C, which requires a severe impairment in addition to mental retardation. Although in July 2008 consultative psychologist J. Jeff Oatley,

Ph.D. diagnosed Plaintiff with mild mental retardation, the ALJ did not accept the IQ scores on which this diagnosis was based. (Tr. 16). The ALJ found those IQ scores were inconsistent with evidence of Plaintiff's level of adaptive functioning and concluded that Plaintiff did not show "significant mental problems normally associated with mild mental retardation." (Tr. 16). The ALJ specifically discussed the IQ score found in Dr. Oatley's opinion (Tr. 16, 20). The ALJ also found Dr. Oatley's IQ testing to be inconsistent with the evidence of record as a whole, including other testing results and other evidence of Plaintiff's adaptive functioning. (Tr. 16-17, 20). As noted above and by the ALJ, although Plaintiff attended several special education classes, he also did fairly well in school and was able to graduate. (Tr. 16, 33-34, 218, 224, 233, 241, 279). The evidence of record also indicated Plaintiff could do several household chores, engaged in hobbies such as watching television and playing video games, and was independent in self-care. (Tr. 16-17, 37-39, 402, 426).

Plaintiff thus has not carried his burden of showing he meets listing 12.05 for mental retardation because he has not satisfied the diagnostic description of mental retardation. Plaintiff also has not shown he experienced significant sub average general intellectual functioning accompanied by deficits in adaptive functioning.

### *(2) Whether the ALJ's finding of non-disability is based on the proper legal standards and supported by substantial evidence*

The ALJ found Blair not disabled because he could perform other work in the national economy. (Tr. 21-22). The ALJ based this finding on his residual functional capacity assessment and on vocational expert (VE) testimony. (Tr. 21-22). Plaintiff asserts that the ALJ did not include all of Blair's impairments and limitations in his RFC finding or his hypothetical question to the VE; specifically, Plaintiff's moderate limitations in concentration, persistence,

and pace.

With regard to the RFC, the fourth step in the evaluation process requires the ALJ to determine the plaintiff's RFC and, based on that determination, decide whether the plaintiff is able to return to his/her previous work. McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986). The determination of RFC is within the authority of the ALJ and along with the claimant's age, education, and work experience the RFC is considered in determining whether the claimant can work. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1520(f)). The RFC assessment is based upon all the relevant evidence of a claimant's remaining ability to do work despite her impairments. Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004); Lewis, 125 F.3d at 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1545(a)). The ALJ must determine the claimant's RFC using all relevant medical and other evidence in the case. Phillips, 357 F.3d at 1238. That is, the ALJ must determine if the claimant is limited to a particular work level. Id. (citing 20 C.F.R. § 404.1567). Plaintiff argues that the ALJ did not properly consider Plaintiff's concentration difficulties and the opinion evidence of record in his evaluation of Plaintiff's RFC, including moderate difficulties in concentration, persistence, and pace. The ALJ's RFC finding was:

> "After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional impairments: he is limited to performing repetitive short cycle work with a Specific Vocational Preparation of 1 to 2 which require only limited interactions with the public; however, he is able to be around public and others in the workplace." (Tr. 18).

Contrary to Plaintiff's argument regarding the RFC finding, the ALJ translated the moderate difficulties in concentration, persistence and pace into functional and work-related

limitations, and summarized the evidence that suggested Plaintiff could work despite those limitations. (Tr. 18-20). The Eleventh Circuit recently held that if an ALJ finds a claimant capable of working despite a psychiatric review technique (PRT) finding of moderate difficulties in maintaining concentration, persistence, and pace, he must: (1) indicate that medical evidence suggests the claimant can work despite the difficulties or (2) explicitly or implicitly account for the difficulties in a hypothetical question to a VE. See Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1181 (11th Cir. 2011). In making his findings at step three of the sequential evaluation, the ALJ noted Plaintiff had moderate difficulties in concentration, persistence, and pace, but did not meet the paragraph B criteria of the listing. (Tr. 17-18). As reflected in the ALJ's decision, the evidence of record supports the ALJ's determination that Plaintiff had the RFC to do work involving only repetitive short cycle work and limited interaction with the general public, despite the moderate difficulties in concentration, persistence, or pace assessed at step three. As the ALJ discussed, Dr. Graham's January 2009 evaluation showed Plaintiff had borderline intellectual functioning, with no problems noted in attention, concentration, or recent or remote memory given this level of intellectual functioning. (Tr. 19, 426). Dr. Graham found largely unremarkable status exam findings overall, with normal mood, affect, and thought processes. (Tr. 19, 425). The ALJ also noted Dr. Graham found Plaintiff had a Global Assessment of Functioning (GAF) score of 65 to 75, indicating only mild symptoms with generally good functioning. (Tr. 19, 426). See DSM-IV-TR at 34. The ALJ additionally noted Dr. Oatley found Plaintiff showed no significant concentration or memory deficits in his July 2008 consultative evaluation (Tr. 17, 401). Thus, the ALJ indicated that medical evidence suggested Plaintiff could work despite the concentration difficulties assessed at step three.

With regard to the hypothetical question to the VE, Plaintiff argues that the question included no limitations in concentration. The ALJ's hypothetical question was:

> "Okay. Now, suppose we have an individual aged 20 and younger; individual has a 12th grade special education and no past relevant work; the individual has no physical limitations; would have limited reading and writing ability and math, so probably about 3rd-4th grade level; this individual would be able to perform repetitive short cycle employment as SVP-1 and 2 only; would be able to be around others; should have limited contact with the public but could have just casual contact. Would this individual be able to perform any other work that exists in the national and local economies?" (Tr. 53)

Hypothetical questions asked by the ALJ to the vocational expert must describe, comprehensively, the claimant's impairments. Loveless vs. Massanari, 136 F. Supp. 2d 1245, 1250 (M.D. Ala. 2001) (citing Pendley v. Heckler, 767 F.2d 1561, 1652 (11th Cir. 1985) (per curiam)). If the hypothetical question upon which the vocational expert bases his evaluation does not assume all of a claimant's impairments, the decision of the ALJ denying a claimant's applications for disability insurance benefits, which is based significantly on the expert testimony, is not supported by substantial evidence. Loveless, 136 F.Supp.2d at 1250. Notwithstanding, the foregoing general standard, the hypothetical question posed by the ALJ may omit non-severe impairments. Id. When using a VE, the ALJ must pose hypothetical questions to the VE to determine whether someone with the same limitations as the claimant will be able to secure employment in the national economy. Humphries v. Barnhart, 183 F. App'x 887, 891 (11th Cir. 2006) (citing Phillips v. Barnhart, 357 F. 3d 1232, 1239 (11th Cir. 2004). That hypothetical question must include all of the claimant's impairments. Humphries, 183 Fed. Appx. at 891 (citing Wilson v Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002)); Jones v. Apfel, 190 F. 3d 1224, 1229 (11th Cir. 1999) cert. denied, 529 U.S., 120 S. Ct. 1723, 146 L. Ed. 2d 664

(2000). However, the ALJ need only include the claimant's impairments as opposed to each and every symptom allegedly suffered by the claimant but either not supported by medical records or alleviated by medication. Ingram v. Comm'r of Soc. Sec., 496 F.3d 1253, 1270 (11th Cir. 2007).

In this case, the ALJ's hypothetical was the same as the RFC, which the Court has recommended is supported by substantial evidence in the record and included credible restrictions based up+on his review of the evidence. Therefore, the hypothetical was proper.

*(3)Whether remand for an award of benefits is appropriate relief*

Plaintiff argues that because the record in this case is fully developed, and the ALJ has already considered the essential evidence of record, the proper remedy is to remand this case for an award of benefits. As the Court has recommended that the ALJ did not err in his role of evaluating the evidence, remand of this case is not proper.

Accordingly, it is now

**RESPECTFULLY RECOMMENDED:**

The decision of the Commissioner be **AFFIRMED.**

Failure to file written objections to the proposed findings and recommendations contained in this report within **fourteen (14) days** from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**RESPECTFULLY RECOMMENDED** at Fort Myers, Florida, this  22nd  Day of May, 2012.

*[Signature: Sheri Polster Chappell]*
SHERI POLSTER CHAPPELL
UNITED STATES MAGISTRATE JUDGE

Copies: All Parties of Record